## WAKEFIELD v. BALLARD et al.

No. 7381.   Decided April 5, 1950.   (216 P. 2d 645.)

See 26 C. J. S., Descent and Distribution sec. 63. Who can maintain action for avoidance of decedent's conveyance, see note, 21 Am. Jur. 881. See also, 33 A. L. R. 51.

*Skeen, Bayle & Russell,* Salt Lake City, for appellant.

*Gaylen S. Young,* Salt Lake City, for respondents.

WADE, Justice.

This suit was commenced by Zella B. Wakefield, as administratrix of the estate of Lucinda A. Ballard, deceased, to set aside three deeds to real property conveyed by Lucinda A. Ballard during her lifetime to Ivan Ballard, Melvin Ballard and Leland B. Ballard, sons of said Lucinda A. Ballard, on the ground of fraud in their procurement. From

a judgment in favor of the defendants, said administratrix appeals.

In 1927, one Francis M. Ballard died intestate, leaving surviving him Lucinda A. Ballard, his wife, then 71 years of age, and five daughters and three sons, all of whom were adults, married and not living with their parents. His estate consisted of real property of the appraised value of approximately $3,400 and of personal property of little value except for two promissory notes due from Leah Erickson and her husband in the sum of $1,930 and Myrtle Denhalter and her husband in the sum of $1,000. Leah and Myrtle were daughters of deceased. Francis M. Ballard had owned about a 13 acre farm in Salem and some property in Payson known as the Nebeker property. The home in which he and his wife Lucinda were living was in Lucinda's name and not part of his estate.

After the funeral, all of the children except a daughter who was not in the city, gathered at the mother's home to discuss how to take care of the mother's needs. It was decided that all the children should convey whatever interest they had in their father's real property to their mother so that she would have sufficient to take care of her needs. The daughter who was not present at this conference later agreed to this arrangement and subsequently all the children deeded their interest to their mother and these properties were distributed to her in 1929 when the probate of the father's estate was concluded.

After Francis M. Ballard's death the mother remained in the home property which she occupied until about three months before her death in August, 1943. Ivan L. Ballard, one of the sons took charge of and managed the farm property in Salem and Melvin Ballard, another son, took charge of the Nebeker property. Leland B. Ballard, the third son, who had been the administrator of his father's estate took care of his mother's home. Even before the death of his father, Leland B. Ballard furnished labor and money to

repair and modernize the home place, putting in a new bathroom, kitchen facilities and new porches, etc. None of the daughters were in a position to help with these repairs or those subsequently needed.

In 1936, Lucinda A. Ballard, the mother, conveyed her homeplace to her son Leland L. Ballard, and in 1937 she conveyed the farm and the Nebeker place to Ivan L. Ballard and Melvin Ballard, respectively, her other sons. At the time these conveyances were made there were about four or five years back taxes due on them. It doesn't appear that Lucinda Ballard ever received any rentals from her properties after her sons went in possession and only about $8 per month from rental of part of her home property, which money she turned over to Leland B. Ballard, to save for her funeral expenses. Shortly after she conveyed her properties to her sons she went "on relief." In May of 1943, while on a visit to her son Leland B. Ballard in Salt Lake City, she became ill and was taken to the home of one of her daughters, Mrs. Izetta B. Kapple (now Hill) at Payson, where she remained until her death in August, 1943. While there, Lucinda Ballard had three suits filed, one against each of her sons to set aside her conveyances to them. She and two of her sons, Melvin and Leland B. Ballard died before trial of these suits and late in December, 1947, or early in January, 1948, Zella B. Wakefield, as administratrix of her mother's estate filed three amended complaints against her brother Ivan, the estate of Leland B. Ballard and the heirs of Melvin Ballard. These suits were subsequently dismissed without prejudice and the instant case was instituted in which it was alleged that the conveyances were made by the children to the mother upon the mutual agreement of all the parties that she should have the use of the properties and its income during her lifetime and that thereafter her entire estate, including her own home property would pass to her estate and be administered and distributed according to the laws of succession. That after these conveyances were made in pursuance of such agree-

ment the sons requested the mother to make conveyances of the properties to them, which she did without any consideration.

The court, as the trier of the facts, found that the children of Lucinda A. Ballard had conveyed their interests in their father's estate to her so that she would be adequately able to maintain herself for the rest of her life and that thereafter she conveyed these properties as well as her own to her sons of her own free will and not because of any promptings, urgings or undue influence exerted over her by her sons. The court also found that there was no mutual agreement between Lucinda A. Ballard and her children, that the properties were to remain in her name during her life and that she was to have the income thereof but that at her death they were to pass according to the laws of succession.

These findings of the court are amply sustained by the record. From the appellant's own testimony it is clear that the only concern of the children at the time they made the conveyances to their mother was that she should have adequate means to take care of her needs. The mother did remark that she would treat them all fairly and that if anything was left they should all share alike. There was nothing in the circumstances surrounding this transaction from which it could be even remotely implied that the parties understood that the mother was to hold the property in trust for her children or that she could not dispose of the property according to her desires during her lifetime.

Before Lucinda Ballard made the conveyances sought here to be set aside she conferred with a daughter and two of her sons about what would be a fair way to settle her estate taking into consideration the relationships between her children and the financial assistance given by one son to a daughter and the amounts expended or work done by the sons for the mother and the properties. At this con-

ference she indicated that she was going to give Ivan the farm and Melvin the Nebeker property, and that would leave the home property to be divided between Eva Martin, the daughter who was at this conference and Izetta, another daughter and to Leland Bert Ballard her other son. The other daughters were not to share in the estate and Izetta's share was to go to Leland Bert to pay Leland for what Izetta owed him. Shortly after this conference, instead of dividing the property in the manner in which it had been discussed, the mother made the conveyances to the three sons. In effect the mother did what she indicated she would do at the conference except that she did not give Eva Martin the one-third interest in the home property which she was considering doing at the time. There is nothing in such circumstances to show undue influence exerted by the sons. The mother was at all times a keen minded woman and knew exactly what she wanted to do. The properties were not yielding revenues, with the exception of the home place, from which she procured about $8 per month. There were four or five years back taxes due against all of them. One of the sons, Leland Bert, had contributed a great deal of his effort and money in keeping up the homeplace, some of the daughters owed money to the father's estate and to their brother. The fact that she decided to convey the properties to her sons under these circumstances is natural and understandable and is consonant with the fact that the properties were hers to do with as she pleased.

Appellant having failed to prove that there was a mutual agreement between all the parties that the mother was to have a mere life estate with a right to the income in the properties and that thereafter they were to pass ■ to her heirs by the laws of succession nor any circumstances from which an implied trust could be impressed on these properties, the court did not err in finding that appellant had no cause for action.

Affirmed. Costs to respondents.

PRATT, C. J., and WOLFE, LATIMER and McDONOUGH, JJ., concur.